O

# United States District Court
# Central District of California

| | |
|---|---|
| WADE GENTZ,<br><br>                    Plaintiff,<br><br>          v.<br><br>TWENTY-FIRST CENTURY FOX, INC.<br>SEVERANCE PLAN, et al.,<br><br>                    Defendants. | Case No. 2:20-cv-10100-ODW (PLAx)<br><br>**ORDER GRANTING PLAINTIFF'S**<br>**MOTION FOR PARTIAL**<br>**SUMMARY JUDGMENT [46]** |

## I.   INTRODUCTION

Plaintiff Wade Gentz initiated this action under the Employee Retirement Income Security Act of 1974 ("ERISA") against Defendant Twenty-First Century Fox, Inc. Severance Plan and related entities (collectively, the "Plan") for severance benefits he asserts the Plan wrongfully denied him.  (Second Am. Compl., ECF No. 35.)   Gentz now moves for partial summary judgment, seeking a legal determination that the Plan is prohibited from asserting in these proceedings that Gentz's termination did not qualify him for benefits under the "Good Reason" provision of the operative severance agreement.  (Mot. Partial Summ. J. ("Mot."), ECF No. 46.)  For the following reasons, the Court **GRANTS** Gentz's Motion.

## II.   FACTUAL & PROCEDURAL BACKGROUND

Gentz worked as an attorney for Twentieth-Century Fox when the latter merged with Disney.   (Defs.' Statement of Uncontroverted Facts ("SUF") 1–2, ECF No. 49-2.)   The Twenty-First Century Fox, Inc. Severance Plan was established in connection with this merger, and Gentz was a plan participant.  (SUF 4–5.)  The Plan provides that, as long as certain procedural requirements are met, any Disney employee who was previously a Twentieth-Century Fox employee and whose employment is terminated in any of the following ways has undergone a "Qualifying Termination" and is entitled to severance benefits:

> If a Participant's employment is terminated in accordance with applicable Law following the Closing and during the Term . . . (1) by the Company other than due to Termination for Cause, (2) by reason of the Participant's death or Permanent Disability or (3) by the Participant for Good Reason . . . then the Participant shall be entitled to [severance benefits].

(Pl.'s App'x Evid. Ex. 1 at 24 ("Plan Document") § 2.1, ECF No. 46-3.)   The capitalized term "Good Reason" in section 2.1 is defined in a separate section of the Plan Document (section 1.19) as follows:

> "Good Reason" shall mean (a) "good reason" as such term or any similar term is defined in a Participant's Individual Employment Agreement, if any, or (b) without the Participant's written consent, the relocation by more than fifty (50) miles of the Participant's primary place of employment; provided, however, that, for purposes of the Plan (but for the avoidance of doubt, not the Employment Agreement Compensation-Related Severance, which shall be governed by the terms of the applicable Individual Employment Agreement), the Closing alone shall not constitute "Good Reason" under the Plan (however, for the avoidance of doubt, any related or resulting change in terms and conditions of employment may constitute Good Reason).

(*Id.* § 1.19.)  For the purpose of this Motion, the parties do not dispute that "Good Reason" as that term is used in section 2.1 is defined by looking to the definition of "Good Reason" provided in section 1.19.

After the merger, Gentz terminated his employment with Disney and subsequently applied for severance benefits, setting forth in detail the reasons why he believed there was Good Reason for his termination.  (SUF 9; Pl.'s App'x Evid. Ex. 1 at 2 ("Gentz Termination Notice").)  In particular, Gentz expressly invoked subsection (3) of section 1.19—the Plan Document's "Good Reason" provision—and argued that there was Good Reason for his termination by detailing the many ways in which his post-merger job represented "a material diminution in the scope and responsibility of [his] role."[1]  (SUF 10; Gentz Termination Notice 4.)

The Plan denied Gentz's application.  (SUF 11; Pl.'s App'x Evid. Ex. 1 at 6 ("Denial Letter").)  In its Denial Letter, the Plan quoted the relevant portion of section 2.1 of the Plan Document and followed the quote with its conclusion and reasoning, as follows:

> According to the Company's Workday employment system of record, your termination is indicated as "Voluntary, Better Outside Offer." Therefore, your termination is not a Qualifying Termination under clauses (1) or (2) of Section 2.1 of the Plan, and you are not eligible for benefits under the Plan.

(*Id.*)

Gentz retained counsel and proceeded to submit an appeal letter to the Plan. (SUF 13; Pl.'s App'x Evid. Ex. 1 at 8 ("Appeal Letter").)  Gentz expressly reasserted his position that there was Good Reason for his termination, setting forth in even greater detail the ways in which his new position represented a material diminution in job responsibilities.  (*See* Appeal Letter.)  The letter concluded with Gentz's counsel's clear, forceful assertion that, "[a]s stated in detail in my client's initial petition, my client's new role involved a reduction in title, was inferior in stature, and included a severe reduction in job responsibilities. As such, this was, under your own standards, a

---

[1] In his Termination Notice, Gentz expressly cited sections 1.19 and 2.1 of the Plan Document and proceeded to directly argue that there was a change in the terms and conditions of his employment. Nowhere in his Termination Notice did Gentz reference any individual employment agreement or alternate definition of good reason.

severance-eligible event. My client is entitled to benefits." (*Id.* at 13.)

The Plan proceeded to deny the appeal using a letter nearly identical to the original Denial Letter.  (SUF 14; Pl.'s App'x Evid. Ex. 1 at 25 ("Appeal Denial Letter").)  The sole substantive change was the Plan's addition of the sentence, "The voluntary termination reason was confirmed by a Company HR Representative." (*Id.* at 26.)

This suit followed.  After the Plan answered, and while the parties were working together to prepare their Joint Report pursuant to Federal Rule of Civil Procedure ("Rule") 26(f), the Plan informed Gentz that it intended to argue that the Good Reason provision in the plan does not apply to Gentz.  (SUF 18; Joint Rpt. 4, ECF No. 21.)  Gentz not only disagrees with this statement but further argues that the Plan is prohibited from making this argument in the first place because the Plan failed to provide Gentz with this rationale during the denial and appeal process.  Gentz now moves for summary judgment to obtain the Court's legal determination on this narrow legal issue.  The parties fully briefed the Motion.  (Opp'n, ECF No. 49; Reply, ECF No. 51.)  After carefully considering the papers filed in connection with the Motion and deeming the matter appropriate for decision without oral argument, the Court now rules as follows.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

### III.   STANDARD OF REVIEW

**A.   Participant Actions Under ERISA**

Under ERISA § 502, a beneficiary or plan participant may sue in federal court "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B); *see also Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004).  Plan participants may also sue under ERISA "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan" or "to obtain other appropriate equitable relief."  ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).  The claimant seeking to clarify a right to benefits under the

terms of the plan carries the burden of proof and must establish entitlement to benefits by a preponderance of the evidence. *See Muniz v. Amec Constr. Mgmt., Inc.*, 623 F.3d 1290, 1294 (9th Cir. 2010).

**B.    Summary Judgment**

Summary judgment is appropriate where there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A movant may request partial summary judgment, that is, summary judgment on a part of a claim or defense. Fed. R. Civ. P. 56(a); *see, e.g., Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 860 F. Supp. 1448, 1449 (C.D. Cal. 1993). Summary judgment is "not a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

When, as here, the parties submit a complete, uncontested evidentiary record for the Court's review and resolution of the motion does not otherwise involve disputed material facts, the sole question on summary judgment is whether the facts entitle the movant to judgment as a matter of law. *See Delbon Radiology v. Turlock Diagnostic Ctr.*, 839 F. Supp. 1388, 1391 (E.D. Cal. 1993) (deciding as a matter of law on summary judgment whether a partner had authority to enforce a partnership claim in spite of another partner's opposition to suit).

## IV.    DISCUSSION

As a preliminary point of clarification, this summary judgment motion does not present the typical ERISA scenario in which the federal district court reviews a plan administrator's decision under either a de novo or an abuse of discretion standard. This is because, at this juncture, Gentz is not asking the Court to review the outcome of the Plan's decision. Instead, Gentz is asking for a separate, much narrower legal determination: that when it comes time for the parties to argue in this Court about whether Gentz is entitled to benefits, the Plan will be prohibited from raising a

particular argument it did not raise during the earlier phases of this dispute.  The Court makes this determination based primarily on the communications between the parties and ERISA law, without referring to the substance of the Plan or interpreting it.  The Court's focus is on what the Plan told Gentz—about its interpretation of the Plan Document, its assessment of Gentz's own contentions, and otherwise.

For the purpose of making this determination, the evidentiary record presents a set of essentially undisputed facts.  Gentz presents the Court with a record of his course of communications with the Plan, and no one contends that this record is incomplete or otherwise improper.  (*See generally* Pl.'s App'x Evid. Ex. 1.)  The Plan, for its part, adds to the record by presenting a draft version of the Denial Letter. (Decl. Clarissa A. Kang Ex. A ("Draft Denial Letter"), ECF No. 49-2.)  Gentz does not oppose the Plan introducing this additional evidence.   The Court therefore proceeds to make the requested legal determination on a record it treats as complete[2] and undisputed.[3]

**A.     ERISA's "Specific Reasons" Requirement**

When an ERISA plan administrator denies a claim, the plan administrator must provide the participant with the "specific reasons" for the denial, "written in a manner calculated to be understood by the participant."   ERISA § 503(1), 29 U.S.C. § 1133. "The administrator must . . . give the claimant information about the denial, including the 'specific plan provisions' on which it is based and 'any additional material or information necessary for the claimant to perfect the claim.'"   *Id.* (citing 29 C.F.R. § 2560.503-1(g)); *see also Booton v. Lockheed Med. Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997) ("[I]f the plan administrators believe that more information is

---

[2] To be clear, the record here is "complete" for the purposes of this Motion in particular, not for the purposes of a complete administrative record a court would review in making its final determination.
[3] The Plan submits evidentiary objections in opposition to Gentz's Motion.  (Mem. Supp. Evid. Objs., ECF No. 49-1.)  All these objections, however, go to factual assertions in Gentz's Statement of Undisputed Facts, not to individual pieces of evidence.  Objections are to be made to evidence, not to mere factual assertions.  (*See* Scheduling & Case Management Order 8, ECF No. 23 (directing parties to "identify the specific item of evidence to which objection is made").)    In this sense, the Plan's evidentiary objections are a logical nullity and are **OVERRULED**.

needed to make a reasoned decision, they must ask for it.").  If a denial is appealed, the plan administrator must provide a "'full and fair review' of the denial" and, if the plan administrator denied the appeal for multiple substantial reasons, it must state all those reasons.  *See Harlick v. Blue Shield of Cal*., 686 F.3d 699, 720 (9th Cir. 2012) (quoting 29 U.S.C. § 1133).

To enforce these rules, courts have held that an "administrator may not hold in reserve a known or reasonably knowable reason for denying a claim, and give that reason for the first time when the claimant challenges a benefits denial in court." *Spinedex Physical Therapy USA, Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1296 (9th Cir. 2014).  That is, whenever a plan administrator fails to assert a known or knowable basis for denial of benefits, the plan administrator is barred from raising that basis during the subsequent civil action.  *Mitchell v. CB Richard Ellis Long Term Disability Plan*, 611 F.3d 1192, 1199 n.2 (9th Cir. 2010); *see also Harlick*, 686 F.3d at 720 (observing ERISA's purpose is "undermined where the plan administrators have available sufficient information to assert a basis for denial of benefits, but choose to hold that basis in reserve rather than communicate it to the beneficiary").  As the Ninth Circuit has observed, "there is nothing extraordinary" about these rules, which reflect how the law expects "civilized people [to] communicate with each other regarding important matters." *Booton*, 110 F.3d at 1463.

**B.    The Plan's Incomplete Reasons For Denying Gentz Benefits**

It is undisputed that in neither the Denial Letter nor the Appeal Denial Letter did the Plan expressly refer to the Good Reason provision or respond to Gentz's specific arguments supporting his belief that the Good Reason provision applies. Gentz now argues straightforwardly that, because the Plan failed to expressly engage with the Good Reason provision in denying Gentz benefits, the Plan is prohibited from arguing in this Court that the Good Reason provision does not apply.  (Mot. 9; Reply 6–10.)

1   The Plan responds to this argument with a volley of points.  The Plan points out
2   that, although its letters did not expressly refer to the Good Reason provision, its
3   letters also did not expressly rule out the Good Reason provision as the basis for
4   denying Gentz benefits.  (Opp'n 10.)  The Plan further reasons that, because Gentz
5   himself extensively engaged with the Good Reason provision in his own letters, the
6   Plan's denial letters necessarily function as a rejection of the application of the Good
7   Reason provision and of Gentz's reasoning in support of the Good Reason provision.
8   (Opp'n 9–10.)  The Plan also observes that Gentz did not argue that his termination
9   was a Qualifying Termination under subsections (1) or (2) of section 1.19, and instead
10  argued that his termination was a Qualifying Termination under subsection (3) only,
11  and thus, he must have understood that the Plan denied him benefits under the Good
12  Reason provision.  (Opp'n 9.)  In sum, the Plan argues, the course of the parties'
13  communications made clear to Gentz that the reason it denied him benefits was
14  because he did not qualify for them under the Good Reason provision, and as such, the
15  Plan is permitted to present arguments about the Good Reason provision before this
16  Court.

17  The Plan's position does not withstand scrutiny because to the extent the Plan
18  did communicate any reasons, those reasons were not "specific."  ERISA § 503(1),
19  29 U.S.C. § 1133.  Under the terms of the operative Plan Document, there are three
20  ways for a termination to be a Qualifying Termination.  (Plan Document § 1.19.)
21  Gentz applied for benefits, arguing that his termination was a "Way #3" Qualifying
22  Termination.  The Plan responded by denying his benefits and explaining that his
23  termination was not a "Way #1" Qualifying Termination and that it was also not a
24  "Way #2" Qualifying Termination.  But because Gentz's argument was about Way #3,
25  the Plan's response, which engaged with only Way #1 and Way #2, was incomplete.
26  Simply put, the Plan never set forth the specific reasons why the Good Reason
27  provision did not apply because it never in fact addressed why the Good Reason
28  provision did not apply.  (*See* Denial Letter.)

The Appeal Denial Letter, rather than altering or improving this analysis, only further cemented it by reiterating that neither Way #1 nor Way #2 made Gentz's separation a Qualifying Termination; it again did not address whether or why Gentz's separation was not a "Way #3" Qualifying Termination.  The Plan's addition of the sentence indicating that an HR representative confirmed Gentz had voluntarily separated for a better employment offer did not constitute a statement of whether or why Way #3 was inapplicable, because under the provided definition of "Good Reason," an employee can terminate his employment, voluntarily accept a better offer elsewhere, and still have Good Reason for the termination.  (*See* Appeal Denial Letter; Plan Document § 1.19.)

Thus, even if the sum total of the Plan's communications with Gentz constituted an implied statement that Gentz had no Good Reason for his termination, the Plan nevertheless unequivocally failed to set forth the "specific reasons" explaining why it concluded there was no Good Reason.  ERISA § 503(1), 29 U.S.C. § 1133.  This conclusion resolves the Motion in Gentz's favor; Gentz is entitled to an order prohibiting the Plan from raising those specific reasons in these proceedings.

An alternative ruling would contradict both the letter and spirit of ERISA and would imply that plan participants, including non-attorneys, are required to deduce the reasons for a denial of benefits from a denial letter by referring to other materials and engaging in a complex series of logical syllogisms.  The Court declines to place this burden on ERISA plan participants.  *See Booton*, 110 F.3d at 1463.

The evidence the Plan submits in opposition to this Motion only confirms the Court's conclusion.  The Plan submits a draft version of its original Denial Letter and admits that this early version included a separate section beginning with the words, "[w]ith respect to your claim for a benefit under the Plan related to a 'Good Reason' termination," and proceeding to set forth the Plan's rationale why Gentz's termination

was not a "'Good Reason' termination."[4]   (Draft Denial Letter 1.)   The Plan admits that its omission of this section from the final Denial Letter was "inadvertent[]." (SUF 20.)   The text in the draft that was ultimately omitted from the final version reveals that, in denying Gentz benefits, the Plan interpreted the definition of Good Reason as encompassing two and only two factual scenarios: (1) where the employee has a separate individual employment agreement with its own definition of "good reason," and there was good reason for the termination under that separate definition; or (2) where the participant is required to relocate more than fifty miles from their prior primary place of employment.   The section the Plan deleted from the Denial Letter makes clear that the language "any related or resulting change in terms and conditions of employment may constitute Good Reason" did *not*, under the Plan's interpretation of the Plan Document, constitute its own separate subcategory of Good Reason terminations separate from (1) and (2).   In other words, the Plan's position was that even if Gentz did experience a diminution in the terms and conditions of his employment resulting form the merger, Gentz was nevertheless not entitled to benefits, regardless of how substantial the diminution was.

Thus, the "specific reason[]" the Plan denied Gentz a severance benefit was a disagreement about contract interpretation.   ERISA § 503(1), 29 U.S.C. § 1133.   Yet, when the Plan twice informed Gentz he was not entitled to severance, the Plan failed both times to set forth this specific reason, instead citing to two irrelevant subparts of the Plan Document (irrelevant because Gentz had never asserted those subparts applied to his situation).   This left Gentz unable to meaningfully understand *why* the Plan took the position that there was no Good Reason.   Lacking a meaningful understanding of the Plan's true reason for finding no Good Reason, Gentz doubled

---

[4] The parties do not address whether the Court may properly consider the draft version of the Denial Letter in ruling on this Motion.   However, it is the Plan who asked the Court to consider the draft, and Gentz does not object to the request.   Moreover, the outcome of this Motion would be the same without the draft letter because the Plan would nevertheless have failed to provide Gentz the specific reasons it denied him benefits.   The draft simply further illustrates why this rule exists in ERISA law and the consequences of the Plan not having followed the rule in this case.

down on his prior argument, explaining with greater force why the diminution in his job responsibilities gave him Good Reason to leave the company.  (*See* Appeal Letter.)

But the Plan's specific reason for denying Gentz benefits never was that it thought Gentz had not experienced a sufficient diminution in work conditions.  The specific reason was that it disagreed with Gentz's interpretation of the definition of Good Reason.  Had the Plan provided Gentz with this specific reason, Gentz would have dedicated less space in his Appeal Letter to the factual dispute and more space to the contract interpretation issue, facilitating meaningful discussion and possibly early settlement.

The Plan failed to set forth its specific reasons for denying Gentz benefits, and accordingly, the Plan is not permitted to set forth those reasons for the first time in federal court.  The Court **GRANTS** Gentz's Motion.

## C.   Form Of Relief

Having established that Gentz is entitled to a legal finding on the Plan's ability to assert the Good Reason defense in these proceedings, the remaining question is the exact form of appropriate relief.  Gentz's papers are somewhat inconsistent on this question.  In general, Gentz seeks an order that the Plan is now barred from asserting in any way that the Good Reason provision did not apply to him.  (*See* Mot. 9; Prop. Order 2, ECF No. 46-4.)  In the Reply, however, Gentz modifies this request and asks for a slightly narrower determination that "the only issue remaining for trial is whether Gentz's evidence of job comparability is sufficient to establish his eligibility for benefits" under the Plan Document's definition of Good Reason.  (Reply 10.)

The Court finds the appropriate remedy to be the one tethered to what Gentz actually argued and demonstrated with his Motion.  *First,* Gentz demonstrated that during the denial and appeal process the Plan failed to set forth as the specific reason for denying him benefits its argument that the Plan Document's definition of Good Reason, properly interpreted, does not include a separate category for voluntary

terminations made due to a diminution in job responsibilities. *Second,* Gentz demonstrated that the Plan failed to set forth as the specific reason for denying him benefits its belief that Gentz did not in fact experience a sufficient diminution in his job responsibilities.[5]   Thus, the Plan is prohibited from arguing in these proceedings that either of these specific reasons supports denying Gentz benefits.

## V.   CONCLUSION

For the reasons discussed above, Gentz's Motion is **GRANTED**.   (ECF No. 46.)  The Court hereby **FINDS** that, for the purpose of these proceedings, the Plan is prohibited from (1) arguing that the Plan Document's definition of Good Reason, properly interpreted, does not include a separate category for voluntary terminations made due to a diminution in job responsibilities; and (2) arguing that Gentz did not in fact experience a sufficient diminution in his job responsibilities.

**IT IS SO ORDERED.**

March 25, 2022

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**

---

[5] Immateriality of changes in Gentz's work conditions was never *in fact* a reason the Plan denied Gentz benefits, so no one can logically and credibly assert that the Plan told Gentz that the specific reason was that the changes in his work conditions were immaterial.